# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO HERNANDEZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL[1], <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:16-cv-01228 - JLT <br><br> ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) <br><br> ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF ROBERTO HERNANDEZ, JR. AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Roberto Hernandez Jr. asserts he is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny his application for benefits. Because the ALJ failed to apply the proper legal standards in evaluating the credibility of Plaintiff's subjective complaints, the decision is **REMANDED** for further proceedings.

## **PROCEDURAL HISTORY**

Plaintiff filed his application for benefits on September 21, 2012, alleging disability beginning on March 20, 2011. (Doc. 11-6 at 2) The Social Security Administration denied the application at

---

[1] Nancy A. Berryhill is now Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant in this suit.

1

both the initial level and upon reconsideration. (*See generally* Doc. 11-4; Doc. 11-3 at 12) After requesting a hearing, Plaintiff testified before an ALJ on November 18, 2014. (Doc. 11-3 at 12) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on January 30, 2015. (*Id.* at 12-22) When the Appeals Council denied Plaintiff's request for review on June 14, 2016 (*id.* at 2-4), the ALJ's findings became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.    Medical Background and Opinions**

Plaintiff performed "heavy work" as a barrel filler for Kraft Foods until March 19, 2011. (Doc. 11-8 at 2) In February 2011, Plaintiff reported he began "having headaches and pain down to [his] neck" while working, but he did not "recall[ ] trauma to the head, neck or shoulders." (*Id.*) Plaintiff said the pain caused nausea and "difficulty with mentation." (*Id.* at 8)

On March 3, 2011, Plaintiff had a CT scan performed on his head due to his headaches. (Doc. 11-8 at 95) Dr. Daniel Hightower determined the results were normal and unremarkable, "without evidence for acute ischemia, mass, mass effect or hemorrhage." (*Id.*) Later in the month, Plaintiff had an MRI on his brain. (*Id.* at 8) Dr. Thomas MacLennan concluded Plaintiff did not have an acute infarct or focal intracranial abnormality. (*Id.* at 8-9)

In May 2011, Plaintiff had an MRI on his cervical spine. (Doc. 11-8 at 10) Dr. MacLennan found Plaintiff had "[s]ignificant acquired spinal stenosis" at the C5- C6 and C6-C7 levels. (*Id.* at 11) Plaintiff continued to be treated for pain throughout 2011 and 2012. (*See generally id.* at 20-53)

Dr. Majid Rahimifar performed a consultative examination on October 18, 2012, at the Bakersfield Neuroscience & Spine Institute. (Doc. 11-9 at 10) Plaintiff said his pain "start[ed] at the right side of the temple and shot[] down to the right shoulder." (*Id.*) He described the pain as "sharp,"

and "a 10/10 at its peak and 3/10 normally." (*Id.*)  Plaintiff told Dr. Rahimifar that his pain was "aggravated by lying down and daily activities and relieved occasionally with medication." (*Id.* at 10)  Dr. Rahimifar observed Plaintiff had a normal gait and a negative straight leg raise test. (*Id.* at 11)  According to Dr. Rahimifar, Plaintiff's motor strength was "+4/5 with flexion of the [right] arm" and "+4/5 with grip of the right hand." (*Id.*)  Further, Dr. Rahimifar determined Plaintiff's range of motion was "full with no pain" in his cervical spine. (*Id.*)  Dr. Rahimifar recommended that Plaintiff have physical therapy for six weeks, and requested an EMG/nerve study as well as imaging of the cervical spine. (*Id.*)

On December 6, 2012, Plaintiff had an x-ray on his spine. (Doc. 11-9 at 13)  Dr. Donald Blackford found "[m]ild-to-moderate degenerative change at the C5 through C7 levels" and "some minimal early facet joint change … [and] suspect components of developing spinal stenosis at the lower levels." (*Id.*)  Dr. Blackford found "no evidence of fracture and/or area of sublaxation" and "[n]o components of degenerative disk disease at the C5 through C7 levels." (*Id.*)

Dr. Ronald Kent performed an agreed medical evaluation on December 18, 2012. (Doc. 11-9 at 20)  Plaintiff told Dr. Kent that he had "some difficulty typing his shoes, sitting, reclining, rising up from a chair, standing, walking, climbing stairs, performing light housework including laundry, grasping/gripping, carrying objects, making a meal, cutting food, riding in a motor vehicle, [and] driving a motor vehicle." (*Id.* at 24)  Plaintiff stated he was able to lift "[w]ith much difficulty." (*Id.*)  Dr. Kent determined Plaintiff was "alert and oriented…, with normal recent and remote memory and language skills." (*Id.* at 53)  Plaintiff's motor strength was "5/5;" his gait was "intact to casual, toe, heel and tandem gait maneuvers." (*Id.* at 53-54)  Dr. Kent observed that Plaintiff exhibited "tenderness to palpation of the cervical paraspinous, trapezius, rhomboid, and sternocleidomastoid musculature on the right." (*Id.* at 52)  Further, Dr. Kent's range of motion in his neck extension was "limited to 25 degrees." (*Id.*)

On January 5, 2013, Plaintiff underwent an MRI on his spine. (Doc. 11-10 at 11)  Dr. MacLennan determined that Plaintiff exhibited straightening of the normal cervical lordosis, "[s]ignificant disc narrowing" at the C5-6 and C6-C7 levels, "moderate right mild left neural foraminal stenosis" at the C3-C4 level, "advanced right moderate left neural foraminal stenosis" at the

C4-C5 level, and "advanced bilateral neural foraminal stenosis" at the C5-C6 level. (*Id.*)

Dr. Stephen Choi performed a qualified medical re-evaluation on December 13, 2013. (Doc. 11-11 at 25) Dr. Choi observed that Plaintiff's "[a]ctive range of motion" in his neck was "fairly compromised." (*Id.* at 29) He opined Plaintiff's flexion was 50% of the normal range, extension was 30% of the normal range, lateral flexion was 50%, and lateral rotation was 75%. (*Id.*) Dr. Choi found "no ongoing paracervical muscle guarding" and "the compression test [was] negative." (*Id.*) However, Plaintiff exhibited "mild tenderness on the right side of the nuchal line down to the C7-T1 area" and "mild tenderness in the medial border of [the] right scapula." (*Id.*) Further, Plaintiff had "mild tenderness" in his right shoulder." (*Id.*) Dr. Choi also determined Plaintiff had weakness in his right hand, though Plaintiff denied "any ongoing numbness or tingling in the right hand." (*Id.* at 33)

Dr. Rahimifar evaluated Plaintiff's "progressive right cervical radiculopathy" on May 13, 2013. (Doc. 11-12 at 22) Dr. Rahimifar noted Plaintiff had "advanced degenerative cervical disc disease at C6-7, moderate at C5-6 and to a moderate degree at C4-5." (*Id.*) Further, Dr. Rahimifar opined Plaintiff had "radiculopathy in both arms," and "moderate to severe median nerve compressive neuropathy at both wrists." (*Id.*) Upon examination, Dr. Rahimifar determined found "no reflexes [were] detected in [Plaintiff's] upper extremities," and he had reduced grip strength at 4/5 in the left hand and +4/5 on the right. (*Id.*) Dr. Rahimifar opined Plaintiff was "going to need anterior cervical surgery at C4-C5, C5-C6, C6-7 and median nerve decompression initially on the left side at the same time." (*Id.*)

In November 2014, Plaintiff had an MRI on his cervical spine. (Doc. 11-12 at 29) Dr. John Roefs found Plaintiff had degenerative changes "with straightening [of the] cervical lordosis," "[m]ultilevel posterior bulging discs/osteophytes, canal stenosis, and "moderate to severe" foraminal stenosis on the left side and "mild to moderate" on the right at the C6-C7 level.

**B.     Administrative Hearing Testimony**

Plaintiff stated he had "constant" pain in his neck, which increased when he would lie down. (Doc. 11-3 at 39) He stated he had difficulty turning his neck, because he would get a sharp pain, turning his head in either direction. (Doc. 11-3 at 46) Plaintiff reported he also had head headaches daily, which he believed was "from the neck pain." (*Id.* at 42-43) He said that his doctor prescribed a

neck brace at his last appointment prior to the hearing, but he had not yet picked it up. (*Id.* at 46)

In addition, he reported he had pain in his right shoulder that went down into his right arm, and sometimes it felt "like dead weight" and get like he "can't even move [his] arm." (*Id.* at 39) Plaintiff said he took naproxen for the pain, and then switched to tramadol. (*Id.* at 42) He reported that his neurosurgeon told him that he would "need surgery or just live with the pain." (*Id.* at 40) Plaintiff said the pain was "overwhelming" and he wanted to have surgery, but he was "also scared" because he "heard other people have had it and they say it didn't work." (*Id.*)

He testified that he lived in a mobile home, where he was able to "do [a] little" of the household chores. (Doc. 11-3 at 33-34) Plaintiff reported his son helped because he could not "really do much." (*Id.* at 34) For example, he said he would "start doing a little bit of dishes, and then… stop because [he would] get tired and start having pain." (*Id.* at 34-35) In addition, Plaintiff stated he would prepare meals that required "microwaving and stuff that's easy" because cooking was difficult. (*Id.* at 35)

Plaintiff reported he did not engage in any social activities such as a church group or visiting friends and family. (Doc. 11-3 at 35) He said he was "[a]lways at home. (*Id.*) When asked to describe "a typical day," Plaintiff stated:

> Pretty much, I would say I don't sleep much. It's maybe -- maybe two to two and a half hours, you know, in the night and then during the night, I'm up sitting down or laying down. I change positions because I'm in pain all the time. I'll probably -- during the day, I'll sit down and watch TV, and I -- pretty much, I fall asleep while I'm doing that and I wake up in pain. I'll try to do little things, like I said, here and there, maybe -- like try to clean up stuff, but it's just in bits. I mean I could probably do maybe I'd say maybe like ten minutes or something and then I'll sit down. And that's pretty much it.

(*Id.* at 35-36) Further, Plaintiff said he would "lie down a lot and change positions" after about "30 minutes, 45 minutes" due to pain. (*Id.* at 36)

He estimated that he could lift and carry "like a gallon of milk." (Doc. 11-3 at 44) He stated he had difficultly lifting his arms over his head. (*Id.* at 45) Plaintiff believed he could sit "maybe 30 to 40 minutes" before he needed to stand; and he could stand for "like ten minutes" before he needed to sit. (*Id.* at 44-45) He also said he could walk less than ten minutes before he was in pain. (*Id.* at 45)

**C.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

gainful activity after the alleged onset date of March 20, 2011. (Doc. 11-3 at 14) At step two, the ALJ found Plaintiff's severe impairments included: "cervical degenerative disc disease, tension headaches, hypertension, and carpal tunnel syndrome." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 15) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as described in 20 CFR 404.1567(b), including lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for six to eight hours in an 8-hour workday; and sitting for six to eight hours in an 8-hour workday, with the following restrictions: he can occasionally reach overhead. He can occasionally perform overhead push and pull. He can occasionally climb ladders, ropes, and scaffolds. He cannot perform static neck positions, such as keyboarding.

(*Id.* at 15) Based upon this RFC, the ALJ concluded Plaintiff was "unable to perform any past relevant work." (*Id.* at 20) However, the ALJ found there were "other jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 21)

## **DISCUSSION AND ANALYSIS**

Appealing the decision to deny his application for benefits, Plaintiff asserts the ALJ did not identify legally sufficient reasons to reject his credibility. (Doc. 17 at 10-13) On the other hand, Defendant argues the credibility determination "is supported by substantial evidence and free from reversible legal error." (Doc. 18 at 11)

**A.     ALJ's Credibility Analysis**

In evaluating credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 11-3 at 24) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting

effects of these symptoms were not entirely credible . . . ." (*Id.*) Thus, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony.

Factors that may be considered by an ALJ in assessing a claimant's credibility include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (the ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities when weighing the claimant's credibility). The ALJ considered the objective medical record, the treatment received, and Plaintiff's compliance with treatment. (Doc. 11-3 at 17-19) Plaintiff contends the ALJ's analysis regarding these factors was flawed. (Doc. 17 at 10-13)

1. Objective medical record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

Importantly, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support

an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Here, the ALJ failed to identify the portions of Plaintiff's testimony she believed were inconsistent with the medical record. Rather, the ALJ provided only a summary of the entirety of the medical record. (*See* Doc. 11-3 at 17-19)

As the Ninth Circuit explained, a "summariz[ing] the medical evidence supporting [the] RFC determination… is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to … ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). As a result, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D. Cal. Aug. 3, 2016).

In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistences in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible, and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494. Likewise, here, the ALJ offered no more than a summary of the medical evidence, and she did not identify the testimony she did not find credible. Although Defendant identifies inconsistencies between Plaintiff's testimony and the medical records summarized by the ALJ (*see* Doc. 18 at 8-11), these inconsistencies cannot support the adverse credibility determination because the Court is "constrained to *review* the reasons the *ALJ* asserts." *Brown-Hunter*, 806 F.3d at 494 (emphasis in original) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Given the ALJ's failure to "specifically identify what testimony is credible and what evidence undermines the claimant's complaints," the objective medical record fails to support the adverse credibility determination. *See Greger*, 464 F.3d at 972; *Brown-Hunter*, 806 F.3d at 494.

### 2. Treatment received

The Ninth Circuit determined that an ALJ may reject opinion of treating physician who prescribed conservative treatment yet opined that claimant was disabled. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ indicated Plaintiff "received conservative treatment," and opined "the course of medical treatment in this case did not bolster the claimant's credibility with respect to the degree of pain and other subjective complaints." (Doc. 11-3 at 19) However, the ALJ also acknowledged that Plaintiff "was taking hydrocodone with acetaminophen for pain" (*id.*), which is a narcotic medication. *See Terrazas v. Astrue*, 2011 WL 1239814, n.2 (E.D. Cal. Mar. 29, 2011). The prescription of narcotics for pain is not conservative treatment. *See, e.g., Tunstell v. Astrue*, 2012 WL 3765139, at *4 (C.D. Cal. 2012) (rejecting the ALJ's finding that a plaintiff received only conservative treatment because "she had used narcotic pain medication…").

Notably, the Ninth Circuit criticized an ALJ for characterizing treatment as conservative where the claimant's treatment included narcotic pain medication and cervical fusion surgery. *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x. 662, 664 (9th Cir. 2010) (comparing the facts presented to those in *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008), where the ALJ found claimant's treatment to be conservative where claimant took only Ibuprofen to treat his pain). Similarly, here, Plaintiff was treated with narcotic medication and cervical surgery was recommended by Dr. Rahimifar. (Doc. 11-12 at 22) Therefore, the treatment both received by Plaintiff and recommended by his physician was not entirely conservative in nature, and this factor does not support the adverse credibility determination.

### 3. Compliance with treatment

The Ninth Circuit has stated, "[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603. Therefore, noncompliance with a prescribed course of treatment is clear and convincing reason for finding a Plaintiff's subjective complaints lack credibility. *Id.*; *see also Bunnell*, 947 F.2d at 346.

The ALJ noted Plaintiff "was not fully treatment complaint," but did not identify the treatments with which Plaintiff was noncompliant. (Doc. 11-3 at 19) Defendant contends that Plaintiff "admitted

that he was not taking any medication for hypertension as prescribed, he declined to initiate physical therapy, as prescribed, and infrequently checked his blood glucose, despite uncontrolled diabetes." (Doc. 18 at 10) On the other hand, as Plaintiff observes, there is no indication that the recommendation for physical therapy was approved through the worker's comp claim. (Doc. 19 at 3) Moreover, it is unclear how failure to comply with treatment for diabetes and hypertension undermined Plaintiff's subjective complaints concerning his pain with his cervical spine impairments. Regardless, the ALJ fails to identify this evidence in evaluating Plaintiff's credibility, and as a result, the Court is unable to find it supports the adverse credibility determination. *See Brown-Hunter*, 806 F.3d at 494.

### 4. Conclusion

The ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958. The ALJ's failure to specifically discuss and identify what portions of Plaintiff's testimony she found not credible also constituted a failure to apply the correct legal standards in evaluating the credibility of Plaintiff's testimony. As a result, the reasons for rejecting Plaintiff's credibility cannot be upheld by the Court.

## B. Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The

Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony can be credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834.

Importantly, courts retain flexibility in crediting testimony as true, and a remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Here, the findings of the ALJ are insufficient to determine whether Plaintiff's statements should be credited as true. Consequently, the matter should be remanded for the ALJ to re-evaluate the evidence.

## CONCLUSION AND ORDER

As set forth above, the ALJ failed to articulate clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective complaints. As a result, the Court should not uphold the administrative decision. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Roberto Hernandez and against Defendant, Nancy Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **October 16, 2017**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE